MACHINE PRODUCTS COMPANY, INC., et al. *v.* PRAIRIE LOCAL LODGE No. 1538, ETC.

No. 40465 April 15, 1957 94 So. 2d 344

*Robert D. Patterson,* Aberdeen; *R. L. McKnight,* Memphis, Tennessee, for appellants.

*Pyles & Tucker,* Jackson; *Brown & Brown,* Starkville; *Plato Papps,* Washington, D. C., for appellees.

814

ETHRIDGE, J.

This case presents the question of whether a provision in a collective bargaining contract between a labor union and an employer to submit future disputes to arbitration can be enforced by ordering its specific performance.

Appellee, Prairie Local Lodge No. 1538 of the International Association of Machinists, A. F. L. - C. I. O., and some individual members of the union filed this suit in the Chancery Court of Monroe County against appellant, Machine Products Company, Inc., and three of its officers for the purpose of obtaining specific performance of an arbitration clause for future disputes in the collective bargaining agreement between the union and the company. After a hearing the chancery court issued a temporary mandatory injunction requiring the company to forthwith proceed with arbitration of the disputes, which were concerned primarily with seniority rights. Several days later defendants filed a demurrer to the bill of complaint and a motion to dissolve the temporary injunction. They were overruled, but the trial court permitted the defendants to take an interlocutory appeal with supersedeas from the decree of October 15, 1956, overruling the demurrer and the motion to dissolve.

1.

█ █ Appellees filed a motion to dismiss the appeal on the ground that the decree was interlocutory in nature and would not settle all the controlling principles involved in the cause, which is required by Code of 1942, Sec. 1148. As will appear subsequently, this appeal will settle the controlling principles and questions raised in the bill of complaint. Its purpose was to require appellant to arbitrate the disputes as to seniority. The interlocutory decree granted that request. Appellants contend that they cannot be forced under the executory arbitration agreement to arbitrate. In the absence of an appeal with supersedeas, arbitration awards might be rendered, and this issue would be decided before a hearing and decision of this case on the merits.

 Moreover, the decree also partook of the nature of a final decree, since once arbitration was accomplished, all of the relief prayed for by appellees would have been granted. A preliminary mandatory injunction should not issue here. Its effect would be to end the case without a hearing on the merits. Griffith, Mississippi Chancery Practice (2d Ed. 1950), Sec. 444; Board of Supervisors of Wilkinson County v. Ash, 142 Miss. 686, 107 So. 763 (1926); Blum v. Planters' Bank & Trust Co. 154 Miss. 800, 122 So. 784 (1929); 2 Am. Jur., Appeal and Error, Secs. 22, 23.

2.

 The bill of complaint averred that the local union is affiliated with the International Association of Machinists, A. F. L. - C. I. O., and is an unincorporated association. As such, it is entitled to bring this suit. Varnado v. Whitney, 166 Miss. 663, 669-670, 147 So. 479 (1933). The individual complainants are members of the union, and brought this action for themselves and on behalf of other members and as representatives of the class. Defendant Machine Products Company, Inc., operates a Vehicle Storage Depot for the United States Air Force at Prairie, Monroe County, Mississippi. The other three defendants are officers of the company, which performs certain maintenance and other tasks with reference to the operation of the depot under contracts with the United States Air Force. On June 28, 1956, the union and the company executed a collective bargaining agreement, effective for a one-year period terminating on June 28, 1957. A copy of this agreement was attached as an exhibit to the bill.

Article XV deals with "grievance and arbitration procedure." It requires the following of a stated procedure to settle any grievances between the company and union. The first three steps consist of conferences between the

employee and union representative and his immediate supervisor, the department head, and the industrial relations director. "If the grievance is not satisfactorily adjusted in step 3, either party may refer the grievance to arbitration," within ten days following the step 3 grievance decision. The arbitration clause then provides that the parties shall by mutual agreement select an arbitrator, but, if they fail to agree upon one within five days after a written request, either party may request the Federal Mediation and Conciliation Service to submit a list of five persons from which the union and company shall select one. Article XV further states:

"C. Arbitration shall be limited to the settlement of specific claims arising out of the interpretation or application of the specific terms of this Agreement.

"D. The Arbitrator shall have no power to change any of the terms of this Agreement or to make any additions thereto, nor to establish or change any job classifications or wage rates, nor to rule on any dispute involving the amount of work an employee shall perform.

"E. The decision of the arbitrator shall be final and binding on the Company and the Union."

Article XX of the collective bargaining agreement deals with "seniority", and also contains a limited exception to the arbitration procedure.

The bill of complaint charged that defendants violated Article XX of this contract by failing to promote, transfer, lay off, and recall union employees back to work in accordance with Article XX, and by failing to prepare proper seniority lists. The company refused, it was alleged, to correct and redress the many grievances and its breaches of contract by arbitration, as provided in Article XV. Defendants refused to join complainants in the prescribed method of selecting an arbitrator and to submit the grievances to arbitration. Attached as exhibits were three letters between the parties in which

the company refused to submit the grievances to arbitration, on the ground that the disputes with reference to seniority were not subject to arbitration because of a stipulation agreement dated June 27, 1956. The bill therefore prayed that the court would order defendants to submit the grievances to an arbitrator to hear and determine them pursuant to Article XV of the collective bargaining agreement, and that on final hearing it would issue a permanent injunction to that effect.

The bill was filed on September 14, 1956. A hearing was held by the chancery court on September 26. D. D. Addington, chairman of the shop committee of the union, testified for complainants that the collective bargaining agreement with the company was entered into on June 28. The local union has less than 300 members, and about 80 are involved in the disputes and grievances. The parties went through the third step in the grievance procedure, but the disputes were not settled. The company refused to refer them to arbitration.

On cross-examination, the company introduced in evidence a "stipulation" agreement between the company and union dated June 27, one day before the collective bargaining agreement was approved and executed. The stipulation provides that the union will terminate its strike at 11:59 P. M. June 27, and that the union and company will enter into a contract containing terms upon which they had already agreed, as soon as the contract was approved by the membership of the local union. It then states: "The Company will return all employees to work who were on the active payroll on 25 June 1956 as soon as possible, but no later than 6 July 1956, and the employee must return by this date. It is recognized by the Union that the Company entered into certain employment agreements on 26 and 27 June 1956, and nothing in this Agreement or in the new contract shall void such Agreements." Apparently this stipula-

tion is the source of the disagreement between the parties, the company taking the position that the quoted provision recognized employment agreements made by the company with nonunion members on June 26 and 27, when there was no contract in effect, and the union contending that it was superseded by the collective bargaining agreement of June 28. It is not necessary for us to consider or decide that issue on this interlocutory appeal.

William E. Sewell is a representative of the International Association of Machinists with general supervisory jurisdiction over the local union. He testified that the contract of June 28 was complete in itself, the grievances were not adjusted, and the company refused to submit the matters to arbitration.

After the hearing on application for a temporary injunction, the learned chancellor recognized that an injunction "would partake of a final judicial process", but was of the opinion that the bill was sufficient on its face to warrant issuance of it, and that, since an arbitration clause in a collective bargaining agreement is in the public interest, it should be enforceable. He did not pass on whether the disputes come within the stipulation or whether it was superseded, reserving decision on that until a final hearing. He thought that the common-law rule, to the effect that an agreement to arbitrate future disputes is revocable before an award is made, should not apply to arbitration agreements in collective bargaining contracts.

So his order of October 10 directed defendants to forthwith proceed to the selection of an arbitrator, to select an arbitrator within five days, and to forthwith proceed to arbitration of the disputes and grievances, upon complainants posting a $5,000 surety bond. Complainants did this, and the writ of injunction was served on defendants on October 15. Defendants filed an answer contending that the grievances were not proper

subjects of arbitration and admitting that they had re-
fused to arbitrate them. They also filed a motion to dis-
solve the injunction and a general demurrer to the bill.
On October 15 without any further hearing the chancery
court overruled the motion to dissolve and the demurrer,
but allowed defendants an appeal with supersedeas.

### 3.

The relief sought in the bill of complaint was for a
decree requiring specific performance by defendants of
the provision in the collective bargaining agreement,
Article XV, to arbitrate future disputes. The question
is whether the court should require specific performance
of such an arbitration clause. We think not. A good
summary of the common-law rule, which exists in Mis-
sissippi and is applicable to this agreement, is set forth
in 3 Am. Jur., Arbitration and Award, Sec. 31: "So long
as agreements to arbitrate, made in advance of the con-
troversy, remain executory, different rules prevail than
in the case of executed agreements. It is settled at com-
mon law that a general agreement, in or collateral to a
contract, to submit to final determination by arbitrators
the rights and liabilities of the parties with respect to
any and all disputes that may thereafter arise under
the contract is voidable at will by either party at any
time before a valid award is made, and will not be en-
forced by the courts, because of the rule that private
persons cannot, by a contract to arbitrate, oust the
jurisdiction of the legally constituted courts. . . . Wheth-
er the foregoing rule, which has variously been attrib-
uted to early jealousy of the courts concerning the ex-
clusiveness of their jurisdiction and to considerations
of public policy, rests on a satisfactory basis has been
questioned, but it has been so long settled that the courts
are unwilling to disturb it."

The leading case applying this rule is Jones v. Harris, 59 Miss. 214 (1881). Jones and Harris were making a final settlement upon dissolution of their partnership. They executed in writing an agreement to submit their controversy to arbitrators, for a consideration of $500 paid Harris by Jones. Before the named arbitrators met, Harris served on them a written notice declining to be bound by their proposed arbitration and revoking the arbitration agreement. The arbitrators met and made an award to Jones, who later sued on the award. The Court said: ''If Harris had the right to revoke the submission to arbitration, that is decisive of this case, for it is undisputed that he did revoke it. The right of either party to revoke a submission before award made, where the submission is not a rule of court, or regulated by statute changing the common law, is well settled and universally recognized. Morse on Arbitration and Award, 230; Caldwell on Arbitration, 76; Billing on Awards, 263; Kyd on Awards, 29. It matters not that the submission is by deed or that it contains a stipulation against the revocability of the submission. Same authorities, and 6 Wait's Actions and Defences, 516, Sec. 6. Nor can the fact that there was a valuable consideration for the agreement of one of the parties to submit to arbitration affect his right to revoke.''

Jones v. Harris was followed in Standard Mill Work and Supply Company v. Mississippi Steel and Iron Company, 205 Miss. 96, 113, 38 So. 2d 448 (1949), where appellee-builder sued appellant-owner for the balance of a contract price for the construction of a warehouse. The contract provided that all disputes ''shall be submitted to arbitration'' in accordance with a stated procedure; and the decision of arbitrators shall be a condition precedent to any right of legal action that either party may have against the other. Appellant contended that under this clause appellee was precluded from ob-

taining a judgment for the balance of the contract price, where it had not submitted the disputes to arbitration. Citing Jones v. Harris and the quoted statements from Am. Jur., the Court said, "Either party to a written agreement for submission to arbitration has the right to revoke the submission before award is made."

6 C. J. S., Arbitration and Award, Sec. 33, also demonstrates that the undisputed common-law rule is as stated: "Although the rule has at times been severely criticized, and it has been said that the more recent cases indicate a settled purpose on the part of the courts to confine the strict common-law rule of revocation to cases falling clearly within it, the general rule is well settled that either party can revoke a common-law submission to arbitration at any time before an award has been made, . . . The reason why the agreement was revocable under common law was, not that arbitration was not favored by it as tending to end litigation, and not for want of consideration, as the ending of litigation was strong consideration, but because of that principle of law that parties could not, by agreement, oust the courts of jurisdiction assigned them by law, and could not debar themselves from appealing to the law and tribunals of the land."

Mississippi has some legislation on arbitration and award, which was first passed in 1892. Miss. Code 1942, Secs. 279-297. It is directed, however, to "any controversy which may be existing" between the parties, that is, a presently existing controversy. Sec. 279. And it does not supersede common-law arbitration. Sec. 297. The statutes provide a procedure for appointment of arbitrators, the making of the award, and its confirmation and modification by a court. They have no reference to an agreement to arbitrate future disputes. Sturges, Arbitration and Award, 25 Miss. L. J., 181 (1954).

2 A. L. I., Restatement of the Law, Contracts (1932), states the common-law rule as follows: ". . . a bargain

to arbitrate either an existing or a possible future dispute is not illegal, unless the agreed terms of arbitration are unfair, but will not be specifically enforced, and only nominal damages are recoverable for its breach. Nor is any bargain to arbitrate a bar to an action on the claim to which the bargain relates. . . . A bargain to arbitrate, though it is not illegal, is practically unenforceable unless arbitration is named a condition (see Sec. 551), since the bargain gives rise to neither a right to substantial damages nor to a right to specific performance. The authority of the arbitrator is revocable by either at any time before an award is made, and though the revocation is a violation of the agreement, the injured party is without substantial redress. If, however, the bargain to arbitrate is carried out and an award made, the award is binding.''

6 Williston and Thompson, Contracts (Rev. ed. 1938), Secs. 1918-1930, contains an exhaustive discussion of arbitration of contracts. It would seem that revocability at common law has two meanings: (1) The arbitration agreement will not be specifically enforced, and (2) the parties have the power to revoke the authority of the arbitrators to proceed, and to make their action thereafter a nullity. Ibid., Sec. 1919, footnote 3.

██ █ In brief, there is no Mississippi statute dealing with the enforcement of agreements to arbitrate future disputes. And there is no question that the common-law rule is that an executory agreement to arbitrate will not be specifically enforced by the courts and is revocable by either party at any time before an award is made.

Appellees do not seriously contend that the common-law rules are in accord with their position. They say that collective bargaining agreements, including arbitration clauses, are contracts which vitally affect the public welfare, as they do, and that therefore the common-

law rule as to commercial arbitration should not be applied to industrial or labor arbitration. However, this is a matter for consideration by the Legislature and not by the Court. In fact, the common-law rules are uniformly applied in industrial or labor arbitration, as well as in commercial arbitration, in the absence of a statute to the contrary. There is a large amount of legal literature recognizing this fact, and also discussing the merits and demerits of legislation which would change the common-law rule. 6 Williston and Thompson, Contracts, Sec. 1930; Phillips, The Function of Arbitration in Industrial Disputes, 33 Col. L. Rev. 1366 (1933); Oliver, The Arbitration of Labor Disputes, 83 Univ. Pa. L. Rev. 206 (1934); Compulsory Arbitration and the Taft-Hartley Act, 51 Col. L. Rev. 993; Forkosch, Labor Law (1953), Sec. 297; 1 Teller, Labor Disputes and Collective Bargaining (1940), Secs. 178-180; 5 Prentice-Hall, Labor Arbitration, Pars. 60101-60107; Gregory and Orlikoff, Enforcement of Labor Arbitration Agreements, 17 Univ. Chicago L. Rev. 233; Phillips, The Paradox in Arbitration Law: Compulsion as Applied to a Voluntary Proceeding, 46, Harv. L. Rev. 1258; Howard, Labor-Management Arbitration: There Ought To Be A Law—Or Ought There?, 21 Mo. L. Rev. 1. In addition, the cases which have considered this issue have applied common-law rules. Lincoln Mills of Alabama v. Textile Workers Union of America, C. I. O., 230 F. 2d 81 (C. C. A. 5th, 1956).

In summary, we hold that the chancery court was in error in ordering specific enforcement of the clause in the collective bargaining agreement between the company and the union which provided for arbitration of future disputes, for the reasons that such a clause at common law will not be specifically enforced, and also because the effect of appellants' refusal to submit these matters to arbitration is to revoke the arbi-

tration clause insofar as it applies to the disputes involved in this action.

However, the bill may be subject to amendment, with reference to seniority or other rights under the contract, other than the arbitration clause considered in this opinion. Cf. Stephenson v. New Orleans & N. E. R. R. Company, 180 Miss. 147, 176, 181, 177 So. 509 (1937). The decree of the chancery court is reversed, the demurrer and motion to dissolve injunction are sustained, and the case is remanded for further proceedings consistent with this opinion.

Motion to dismiss appeal overruled; on the merits, reversed and remanded.

*Roberds, P. J.,* and *Hall, Holmes* and *Gillespie,* JJ., concur.

## ON MOTION FOR THE ALLOWANCE OF DAMAGES ON THE DISSOLUTION OF A TEMPORARY MANDATORY INJUNCTION

HOLMES, Justice:

The opinion in the original appeal of this cause was rendered on April 15, 1957, and suggestion of error overruled on the 3rd day of June, 1957. The original appeal involved an action by union members against their employer for the specific performance of a provision of a collective bargaining contract requiring arbitration of future disputes. The chancellor issued a temporary mandatory injunction requiring arbitration and overruled a demurrer and motion to dissolve, and the employer prosecuted an interlocutory appeal with supersedeas. This Court, in its opinion rendered April 15, 1957 (94 So. 2d 344), reversed the decree of the chancery court and sustained the demurrer and motion to dissolve the injunction and remanded the case for further proceedings consistent with the opinion.

The Machine Products Company, Inc., now seeks by motion filed in this Court to have this Court award damages on the dissolution of the injunction. There has been no award of damages by the lower court.

■■ ■ Section 1353 of the Mississippi Code of 1942 authorizes the chancery court upon the dissolution of an injunction to hear and determine a motion for damages on the dissolution of the injunction and to take evidence thereon and make an award of damages. There is no provision whereby this Court is authorized to initially hear and take evidence on a motion for the allowance of damages on the dissolution of an injunction and to fix and award such damages where no award of damages on the dissolution of the injunction has been made in the lower court. Accordingly, the motion for the allowance of damages is overruled.

*Roberds, P. J.,* and *Hall, Ethridge* and *Gillespie,* JJ., concur.