### WRIGHT et al. v. STATE et al.
#### No. 4352.

Court of Civil Appeals of Texas. Amarillo.
Feb. 18, 1935.

Rehearing Denied April 1, 1935.

E. L. Klett and Bean, Duggan & Bean, all of Lubbock, for plaintiffs in error.

Loyd R. Kennedy, of Morton, and Lockhart & Brown, of Lubbock, for defendants in error.

HALL, Chief Justice.

The state of Texas, as plaintiff, sued Mrs. Wright and her husband, alleging that defendants justly owed it the amount of taxes, interest, penalties, and costs for the year 1932 as set out in the schedule attached to said petition, on approximately 30,000 acres of land fully described in the petition and situated in Cochran county. The prayer is for judgment for the amount of taxes, interest, and penalties due, with foreclosure of the tax lien upon eight tracts of land against which the taxes set out in the schedule were assessed. No question is raised as to the sufficiency of the petition.

The Wrights answered by general demurrer, general denial, and further that no proper orders had been made by the commissioners' court levying said taxes; that the claim for taxes was void, being in violation of section 1, art. 8, of the state Constitution, which requires taxes to be equal and uniform and in proportion to the value of the property; that neither the assessor nor the commissioners'

court assessed, or caused to be assessed and equalized for taxation, minerals, oil and gas in and under the lands in said county where such minerals had been segregated from the fee by deeds on record in the county; that in equalizing the taxes the commissioners' court did not, with reference to land, observe the requirements of article 7206 (Rev. St. 1925), which provides that both improved and unimproved lands shall be divided into three classes each, but instead said court and assessor adopted an arbitrary plan or scheme of valuing lands contrary to said section of the Constitution and said article 7206. Said scheme or plan was that all lands which were by said court classed as agricultural were divided for taxation purposes into three classes without regard to location or proximity to or remoteness from the county seat, schools, churches, highways, or without regard to whether said lands were located in a thickly settled or sparsely settled portion of the county, thereby placing lands of plaintiffs in error at a higher value for taxation than lands of the same quality and classification belonging to other persons whose lands were located in and near schools, highways, the county seat, towns, and in thickly settled communities; that with respect to personal property, especially cattle and horses, a flat or uniform value of $20 per head was fixed, notwithstanding said animals were of different qualities, sizes, ages, breeding, etc.; that, while sitting as a board of equalization, the commissioners produced evidence that the members thereof in 1931 had inspected all lands in the county, classifying the agricultural lands into three classes, class No. 1 consisting of red or black agricultural land of a better quality, No. 2, being a mixed quality or secondary quality agricultural lands, and No. 3 being lands of poorer quality, and fixed a flat value on each class of said land at $12, $10, and $8 per acre respectively, without taking into consideration the location or proximity to the county seat or other towns, schools, churches, etc., or whether the lands were located in thickly or thinly populated parts of the county; that for the year 1932 they adopted the values and classifications fixed by them in 1931 and that such manner of fixing the values was in violation of the Constitution and laws of this state. They alleged that much of their land was of poor quality, being sandy and shinnery land, and on January 1, 1932, none of said land was of a greater value than $5 per acre; that they fixed the values of lands of other taxpayers of the same quality located more favorably in and near settled portions of the county and nearer the county seat,

other towns, schoolhouses, etc., at much less than the values fixed upon plaintiffs' lands; that at the proper time they appeared before the board of equalization, offered testimony as to the value of their property, but that the board refused to consider said evidence, and acted upon their own ideas and fixed opinions already arrived at by means of inspection prior to the time they acted as a board; that, in fixing the values of plaintiffs' land, the board did not comply with the requirements of R. S. arts. 7211 and 7212; that in January, 1933, before the taxes for the year 1932 became delinquent, plaintiffs in error tendered to the tax collector of said county $3,870.08, which was the amount of taxes justly owing by them, and which the tax collector refused to accept because the amount tendered was insufficient.

The case was tried to a jury, and in response to two special issues, the jury found: (1) That the Wright land in controversy had a reasonable cash market value on January 1, 1932; (2) that the valuation fixed on the Wright land for the year 1932 by the commissioners' court of Cochran county, Tex., sitting as a board of equalization, was not in excess of the reasonable cash market value of said land.

Based upon the verdict, judgment was rendered against plaintiffs in error in the sum of $8,881.74, plus 10 per cent. penalty and 6 per cent. interest computed from the time the taxes became delinquent, with foreclosure of the tax lien and order of sale.

The judgment describes each of the ten separate tracts of land belonging to the Wrights which were included in the inventory of property. It further states the amount due on each tract, and directs that, when execution is issued, each tract shall be sold by the sheriff for the taxes against it, unless the owner shall, in writing, under the provisions of the statute, direct a sale otherwise.

The case is before us upon nineteen propositions.

Article 8, § 1, of the Constitution, provides that taxation shall be equal and uniform, and all property in the state, other than that owned by municipalities, shall be taxed in proportion to its value, which shall be ascertained as may be provided by law.

R. S. art. 7174, provides that the assessor, in determining the true and full value of real and personal property, shall not adopt a lower or different standard of value because the same is to serve as a basis for taxation, nor shall he adopt as a criterion of value the price for which such property would sell at auction

or a forced sale or in the aggregate with all the property in his county; but he shall value each tract or lot by itself, and at such sum and price as he believes the same to be fairly worth in money at the time such assessment is made. It further provides that personal property of every description shall be valued at its true and full value in money.

Article 7206 provides that each commissioners' court shall convene and sit as a board of equalization on the second Monday in May of each year to receive the assessment list and books of the assessor, which he is directed to bring before them at such meeting; that such board shall see that every person has rendered his property at a fair market value. Subdivision 3 of the article provides that the commissioners sitting as a board of equalization shall equalize improved lands in three classes, first class to embrace the better quality of land and improvements, the second class to embrace the second quality of lands and improvements, and the third class to embrace lands of but small value or inferior improvements. The unimproved lands shall embrace first, second, and third class, and all other property made as nearly uniform as possible.

██ The first proposition urged is that "the uncontradicted evidence showing that the assessor and the commissioners court sitting as a board of equalization, adopted an arbitrary plan of valuing lands and personal property for taxation which violates those provisions of section 1 of art. 8 of the Constitution which say that taxes shall be equal and uniform and in proportion to the value of the property, which said plan or scheme also failed to comply with article 7206 of the Revised Statutes which says that the board of equalization shall equalize improved lands into three classes and unimproved lands into three classes, the Trial Court should have submitted to the jury the peremptory instruction requested by plaintiffs in error."

The court did not err in refusing to direct a verdict, for the reason that uncontradicted evidence does not show that the board adopted an arbitrary plan in valuing either the lands of the county or Wright's land, nor was an arbitrary plan adopted in valuing the cattle and other personal property. To have directed a verdict where the testimony was conflicting upon these issues would have been fundamental error. Mutual Life Ins. Ass'n v. Smelley (Tex. Civ. App.) 68 S.W.(2d) 1106; Bagley v. Pollock (Tex. Civ. App.) 19 S.W. (2d) 193; 3 Tex. Jur. 824, § 582.

On the inventory of appellants' property is listed approximately 30,000 acres of land, which was rendered by appellants at a valuation of $55,719. Personal property, consisting of 8 horses and mules, 500 cattle, and a wagon, was rendered by appellants at a total sum of $3,566. The board of equalization raised the land values to $308,085, and the value of the personal property was increased to $10,120; the cattle being valued at $20 per head.

F. A. Tupman, commissioner of precinct 3 of Cochran county, showed his familiarity with the character of lands included in the Wright ranch. He testified that all of the lands in the ranch were properly classed as agricultural lands of three different classes; that there is the A–1 grade, which is good, heavy land with a good many lakes on it. The second class is stubble land, with a growth of catclaw and some shallow sand. The third class contains a growth of shinnery, and the sand is deeper. He further said that, in classifying this land and all other lands of the county, the commissioners visited and inspected every tract of land in the county; that, after classifying each tract and valuing it, if it had improvements on it, the improvements were valued and such valuation added to the value of the land. The record shows that the commissioners' court, prior to the time it intended to meet as an equalization board, inspected the lands of the county each year. Tupman testified that in classifying the Wright land they tried to take everything into consideration, the railroad which runs east and west through the county and through the Wright lands; that they further took into consideration two towns or shipping points, one lying immediately east of the Wright land and the other joining it on the west; that they further took into consideration the locality and proximity of schools, churches, towns, roads, and highways. Morton, the county seat of Cochran county, is situated a little north of the center of the northeast quarter of the county. The Santa Fé Railroad runs east and west through the county several miles nearer the southern line. Near the eastern boundary of the county and situated on the railroad is the town of White Face. Twelve or fifteen miles west of that, and nearer the center of the county, is the town of Lehman. The Wrights' lands are situated between these towns. The town of Morton is about twelve miles northwest of White Face and about the same distance northeast of Lehman. There are schools and churches in all three of the towns, but Lehman and White Face, by reason of being railroad towns, are the shipping points. The testimony with reference to the value of other lands in the county of the

same character and similarly located with reference to shipping points, the county seat, schools, etc., is meager, but, in view of the conflict upon these issues, the court properly refused to direct a verdict for the appellants.

■■ The record shows that very little, if any, of the Wright lands had ever been cultivated. The owners had refused to sell it for agricultural purposes. The only improvements upon the land, aside from the fencing, consisted of a ranch house or shack with some sheds and windmills. As has been shown, article 7206 imposes upon the board of equalization the duty of dividing improved lands into three classes, and further provides that unimproved lands shall be divided into three classes. If, after an inspection of all the lands in the county, the commissioners' court, in the exercise of sound judgment, concluded that the Wrights' lands were suitable for agriculture, it was not only within their province, but it was their duty, to value it as tillable lands, whether with or without improvements, and to fix values accordingly. The action of the equalization board in fixing values is judicial in its nature, and they may fix such values based upon matters within their own knowledge. Stair v. Smith (Tex. Civ. App.) 299 S. W. 660; Johnson v. Holland, 17 Tex. Civ. App. 210, 43 S. W. 71. The general rule is that equalization boards may act upon their own judgment of what is equal and just, and, in the absence of fraud, their determination cannot be challenged if it appears that they have previously inspected the properties with the view of determining values. Star Milling Co. v. Board of Councilmen (Ky.) 125 S. W. 1051; West v. Ballard, 32 Wis. 168; Weehawken Tp. v. Roe, 36 N. J. Law, 86; Fields v. Russell, 38 Kan. 720, 17 P. 476; Hacker v. Howe, 72 Neb. 385, 101 N. W. 255.

■ By the second proposition appellants insist that, because the taxes sought to be collected were unlawfully and illegally assessed in violation of section 1, art. 8, of the Constitution and of the laws of Texas, as shown under the first proposition, and since appellants at the proper time rendered their property to the assessor for taxes for the year 1932, and before said taxes became delinquent tendered payment in accordance with such rendition, the judgment below should have been for plaintiffs in the amount of $3,870.08, with foreclosure of the tax lien, and appellants insist that this court should now render such judgment.

We are not prepared to assent to the statement upon which this contention is based, even if the record was in such a condition that the judgment could be rendered by this court. We are not authorized to set aside the finding of a jury and substitute our own finding or accept even the sworn statement of parties or witnesses contrary to the finding of the jury.

■ The third proposition is: There being no legitimate evidence that appellants' lands had on January 1, 1932, a reasonable cash market value as high as that fixed by the board of equalization, the court should have sustained the second objection of appellants to the court's charge (said objection being that the second special issue should not have been given because all the legitimate evidence is to the effect that the reasonable cash market value of the Wright lands was less than the values fixed by the court), and the court's failure to sustain such objection was prejudicial error.

Since the members of the board were authorized to act upon their own information and knowledge (Stair v. Smith [Tex. Civ. App.] 299 S. W. 661; Johnson v. Holland, 17 Tex. Civ. App. 210, 43 S. W. 71) and because there is other legitimate evidence tending to show the cash market value of appellants' lands on January 1, 1932, this proposition is not sustained by the record and is overruled.

For the same reason the fourth proposition is overruled.

Propositions from 5 to 13, inclusive, are based upon the action of the court in refusing to submit special issues inquiring as follows:

(5) Did the assessor and commissioners' court for the year 1932 fix values of lands of the same general quality at the same general value per acre, regardless of location?

(6) Did they take into consideration the use made of the land?

(7) Did they fix the values of lands of the same quality at a uniform value without regard to location in the county?

(8) Did they fix the values of lands of the same quality at the same general price without regard to the proximity or closeness of said lands to the towns, schoolhouses, churches, etc.?

(9) Did they give the lands located near the towns, schools, churches, etc., a higher value than they gave lands of similar quality located in the remote parts of the county?

(10) Did they give the same value to lands used for grazing purposes as they did to the same kind or quality of land used for farming purposes?

(11) Did they give the same value to land in a thinly settled part of the county as they

did to the same kind of land in a more thickly settled part of the county?

(12) During the year 1932, was some of the stock cattle in Cochran county of greater value than others?

(13) Did they assess and value for taxation all, or practically all of the stock cattle in Cochran county at the same general price per head?

In the case of Rowland v. City of Tyler (Tex. Com. App.) 5 S.W.(2d) 756, 760, Judge Leddy said: "It cannot be doubted that the amount of rental a particular piece of property produces is an important element to be considered in fixing the value of that property. It is likewise true that there are a number of other elements which necessarily enter into the value of any particular piece of property, such as original cost, location, cost and character of improvements, rental history, location as to future growth of the city, sales of adjacent property, etc. To use any one particular element as the sole standard by which to fix the value of all property is fundamentally wrong, and, in the very nature of things, prevents the ascertainment of the value contemplated by the Constitution."

See, also, Phillips Petroleum Co. v. Townsend et al. (C. C. A. Tex.) 63 F.(2d) 293.

"In estimating the value of land, an assessor should take into consideration all of its elements or incidents, such as location, quality, condition, improvements and use which affect market value or would influence the mind of a purchaser. Also the adaptability or availability of the land for a particular use may be considered in so far as it enhances the present actual value of the land but future values which are merely possible, conjectural or speculative, and are not reflected in present market value are not to be considered or adopted." 61 C. J. 643, § 793.

The location, accessibility, or market, transportation facilities, adaptability, etc., may all be taken into consideration in a proper case. As to land, "the element or elements of value which lead to the most profitable form of improvement fixes the proper valuation of the land. Farm property with suburban conditions should be assessed with reference to use of the land for other than farm uses. * * * Due regard must be had to the valuation of other land in the same district." 3 Cooley, Taxation (4th Ed.) § 1146.

It is also permissible in a proper case to value the land and improvements thereon separately in the first instance and then add the two valuations together to fix the total assessment. 61 C. J. 645, § 795.

In Slatersville Finishing Co. v. Greene, 40 R. I. 410, 101 A. 226, 228, L. R. A. 1917F, 585, upon the question of the valuation of land for taxing purposes, the court said: "The value of land depends upon its capacity for improvement. The elements of its value may be its fertility, the minerals in its soil, its location, the configuration of its surface, and many other circumstances, one or more of which may be incident to a certain tract of land. In estimating its value for the purpose of sale or of taxation, all these incidents should be considered, and the element or elements of value which lead to the most profitable form of improvement fixes the proper valuation of the land. The owner may not see fit to improve his land at all. He may put it to uses which are much less profitable than others for which it is suited. He cannot thereby lessen its valuation for the purpose of taxation."

 The ultimate facts to be established relate to the matter of equality and uniformity in fixing the value of appellants' property in proportion to other property of like kind and quality in the county, as provided by the Constitution, and whether its true and full value had been determined after valuing each tract or lot of land by itself at such price as it would be fairly worth in cash on January 1st next before the assessment was made and valuing the personal property at its true and full value in money as provided by statute. These ultimate issues were not submitted. The failure to submit them requires a reversal of the judgment. Merely evidentiary matters should not be submitted to the jury. Speer's Law of Special Issues, §§ 15, 16, 22, 128, 131, 443; 64 C. J. 1132–1134. This rule excludes the submission of issues which require findings merely upon the elements to be considered in estimating the value of the property. The requested issues which the court refused were at least sufficient to call the court's attention to the failure of the charge to submit the ultimate issues upon which the judgment must necessarily be based. Texas Power & Light Co. v. Culwell (Tex. Com. App.) 34 S.W.(2d) 820, 822; 3 Tex. Jur. 202.

 The court did not err in excluding the proffered testimony tending to show that the assessor had not assessed certain oil lease-

holds in the county. City of Wichita Falls v. J. J. & M. Taxman Refining Co. (Tex. Civ. App.) 74 S.W.(2d) 524.

For the reasons stated, the judgment is reversed, and the cause remanded.