**AYCOCK et ux. v. TRAVIS COUNTY et al.**

**No. 10100.**

Court of Civil Appeals of Texas.
Austin.

Feb. 18, 1953.

Rehearing Denied March 11, 1953.

Hornsby & Kirk and John C. Aycock by John C. Aycock, all of Austin, for appellant.

Les Procter, Jr., County Atty., Travis County, Austin, for appellee.

HUGHES, Justice.

Appellants John C. Aycock and wife brought this suit against the Tax Assessor-Collector and other officials of Travis County to enjoin the collection of State and county ad valorem taxes and penalties for the year 1951 on or relating to certain of their real properties in Travis County except as based upon the values shown in their renditions.

A nonjury trial resulted in a judgment that appellants take nothing by their suit.

Appellants have two points the first being that the county's plan of basing all (except as to appellants) 1951 assessments upon 66⅔ per cent of the 1950 assessments of the City of Austin is arbitrary and illegal and second that they alone were excluded from this plan and their properties (Block 61 only) were assessed at 79 per cent of the 1950 City of Austin values and hence they have been the subjects of unlawful discrimination.

We overrule the first point and sustain the second.

The evidence shows that in 1951 the Travis County Commissioners' Court was aware that there were many inequalities in values of real estate as shown on the assessment rolls of the county and that there was an urgent need for a revaluation of all such properties. The court was also aware that a few years previously the City of Austin, in which lies a large per cent of the taxable property of the county, had procured, at great expense, an appraisal of all real estate within the city.

The court decided to take advantage of this appraisal, without cost to the county, by using the city's valuations as a basis or guide for the tremendous task before it.

This decision was made only after members of the court had talked with various city and county officials as well as with Mr. Eherenburg who had made the city's appraisal and had satisfied themselves that

the city assessments were based upon market values fairly and properly established.

The plan of the county was to take the city's assessed values, conceded to be not more than 50% of fair market value, and assess the county property within the city at two-thirds of these values. As to properties outside the city appraisers were employed and inspections and appraisals actually made. As to such properties assessments were based upon one-third of the appraised value.

The above plan was executed and notices of revaluation sent to all property owners advising when and where protests would be heard by the Board of Equalization.

Various taxpayers, including appellants, appeared, were heard and some errors were corrected and adjustments made. In no instance did a taxpayer complain or suggest that his assessment was in excess of market value.

Appellants quote the following from 40 Tex.Jur. p. 167-8 as authority for condemning the method of revaluation used by the county:

"* * * a taxing authority may not adopt assessments made by another taxing authority and then assess all properties according to some selected percentage of such values."

The only authority cited to support the text is Power v. Andrews, Tex.Civ.App., 253 S.W. 870 (Fort Worth). The case does not support the text for as said in Ferguson v. Academy Consolidated Independent School District, Tex.Civ.App., 14 S.W.2d 1051, 1052 (Austin, writ ref.), in referring to such case:

"It merely holds that the action of a school board which 'arbitrarily, and without regard to market value of the lot in question, placed the valuation on said lot for school taxes at three times that fixed by the commissioners' court for state and county taxes, and for city taxes at twice said valuations,' was void, because such valuation was made without reference to the fair market value and because the school

authorities 'were not guided by the market value' in making the assessment."

This latter case is also cited by appellants as authority because it was there held that testimony relating to the value at which the State and county assessed lands was inadmissible on the issue as to what was the true and fair market value of the lands at which the school district could assess them for taxation the court saying:

"The state and county and appellee school district are separate and distinct corporate bodies, each with power to tax property within their respective jurisdictions and without reference to the value the other may assess the same property for taxation; that is, the assessed valuations fixed by one body is not binding upon the other, and each body is left free to assess all property within its jurisdiction at what its officers charged with that duty find the true and fair market value to be. Therefore the value at which one such body may assess property for taxation for its purposes is wholly immaterial and irrelevant as to what value the other may assess it for its purposes."

This holding is unquestionably correct but is inapplicable here. The evidence offered there was of naked opinions or conclusions made out of court and attempted to be proved in court. Here there is no question of the admissibility of City of Austin assessments or of any other evidence nor is it contended that city valuations, per se, are binding on the county and State. The only assessments involved here are the assessment of the county and State and whether they duplicate or parallel city assessments is of no importance.

The decisions of a board of equalization in the matter of valuations are quasi judicial in their nature and values may be determined from matters within the knowledge of the board members. Wright v. State, Tex.Civ.App., 80 S.W.2d 1015 (Amarillo writ dism.). That some of the matters considered may be improper is of no consequence because:

"The process used by the Board in reaching its preliminary valuation is wholly immaterial, the ultimate conclusions or final valuations being the matters under investigation; and unless it be shown that the method used brought about unjust and unlawful results, its judgment will not be disturbed." Druesdow v. Baker, Tex. Com.App., 229 S.W. 493, 495, affirmed 263 U.S. 137, 44 S.Ct. 40, 68 L.Ed. 212.

There are no unlawful results here, rather the method used by the Board in revaluing real estate within the city has promoted equality and justice rather than inequality and injustice. Too, its inexpensiveness commends itself to all taxpayers.

As to appellants' second point and their Block 61, we quote from their unchallenged brief:

"Block 61 and the appurtenances thereto were acquired by appellants in a trade from the City of Austin on July 13, 1950. The City of Austin in effect traded Block 61 located in the Eastern Business District of Austin for a portion of a block fronting 160 feet on West ninth street and joining and being immediately North of the present City Hall. The two pieces of property were determined to be of substantially equal value by appraisers for the City of Austin and by the Mayor of the City of Austin and the trade was even.

"The property North of the City Hall, which on January 1, 1950 was privately owned, was valued by the City on that date for tax purposes at $37,410.00. Block 61, being the property of the City of Austin on January 1, 1950 did not appear on the tax rolls. After the trade, Block 61, which was acquired by appellants, was first valued for tax purposes by the tax department of the City for the remaining part of the year 1950 at $75,710.00. Appellants protested the excessive valuation placed on Block 61 to the City Council of the City of Austin and the City Council of the City of Austin, sitting as a Board of Equalization, on November 24, 1951, reduced the 1950 City tax value on Block 61 from $75,710.00 to $63,800.00 and accepted payment for taxes thereon.

"The Board of Equalization of Travis County refused to reduce the equalized value placed on Block 61 in the amount of $50,510.00, which was calculated from the disputed City of Austin assessment prior to its reduction. At the time the reduction was made by the City of Austin on November 24, 1951, the State and County tax rolls for 1951, which had been certified and approved by the Commissioners Court on September 29, 1951, were closed.

"It was the express intention of all members of the Board of Equalization of Travis County that all property within the City of Austin be valued for 1951 State and County taxes at two-thirds of the 1950 City of Austin tax value or assessment. Appellants were advised by the Board that if the City of Austin lowered the 1950 City Tax value they would do likewise for 1951 State and County tax values.

"If this reduction had been made by the City of Austin before the Equalization Board of Travis County made its mathematical calculations to determine 1951 State and County tax values, appellants State and County tax value would have been calculated by taking two-thirds of $63,800.00 rather than two-thirds of $75,710.00 and appellants State and County tax assessment would have been $42,534.00 rather than $50,510.00."

One of the Board members testified:

"Q. Sitting as a board of equalization, you did not intend to take more than two-thirds of the City's assessments in 1950 or 1951, did you? A. No, Sir.

"Q. And in any instance that you did it, it was done inadvertently? A. Yes, Sir.

"Q. Or as a result of a subsequent change in the City's valuation? A. That's right."

Our Constitution requires that taxation shall be equal and uniform, Art. VIII, Sec. 1, Vernon's Ann.St., and our Supreme Court has held that "equality of taxation necessarily depends upon uniformity of assessment." Lively v. Missouri K. & T. R. R. Co., 102 Tex. 545, 120 S.W. 852, 857.

It is no objection, however, that an assessment is for less than actual cash market value if uniformly applied. City of El Paso v. Howze, Tex.Civ.App., 248 S.W. 99 (El Paso, writ ref.).

It is obvious that there has been lack of uniformity of assessment as to appellants' Block 61. The trial court should have enjoined the collection of county and State taxes for the year 1951 based on a value in excess of the amount finally fixed by the City of Austin. Lively case, supra.

In order that our opinion may not be misunderstood we wish to say we have not held that the county or State nor the Board of Equalization has abrogated in favor of the City of Austin any of its lawful authority or duties in regard to the assessment and collection of taxes. All we hold is that a general plan adopted by the county must be enforced uniformly. If under the plan in use errors or inequalities appear in the rolls of the city or county it is the duty of the Board to correct and adjust insofar as the county and State are concerned.

Judgment is here rendered granting a permanent injunction as above indicated, otherwise the judgment of the trial court is affirmed.

Affirmed in part and in part reversed and rendered and injunction granted.

On Motion for Rehearing.

Ground Two of Appellants' Motion for Rehearing reads:

"The Court of Civil Appeals erred in refusing to grant an injunction against collection of Travis County and State taxes for the year 1951 on Lot 7 Section 11 Pemberton Heights in Excess of ⅔ of 1951 City of Austin tax assessment values since the Board of Equalization of the City of Austin found that the tax values used by the City of Austin in 1950 on Lot 7 was

excessive and not equalized and lowered such assessment in 1951."

As to such ground the motion is overruled for the reason that such ground was not presented by appellants in their brief on file herein.

Other grounds of the motion have been fully discussed in our original opinion.

The motion is overruled.