**BROTHERHOOD OF RAILROAD TRAIN-MEN et al., Appellants,**

v.

**F. L. LUCKIE et al., Appellees.**

**No. 14987.**

Court of Civil Appeals of Texas.

Dallas.

Nov. 18, 1955.

Rehearing Denied Jan. 13, 1956.

Willis & Willis and J. T. Suggs, Dallas, and Freeman, Wolfe, Henderson & Bryant, Sherman, for appellants.

Gullett & Gullett, Denison, and Freels, Elliott & Nall, Sherman, for appellees.

YOUNG, Justice.

This is a class action brought by F. L. Luckie and twelve others, all operating employees of MK&T Railway Company of Texas (herinafter styled Katy), and each a member of one of the four Brotherhoods, defendant-appellants, for themselves and others similarly situated, against the Brotherhood of Railroad Trainmen, Grand International Brotherhood of Locomotive Engineers, Brotherhood of Locomotive Firemen and Enginemen, Order of Railway Conductors and Brakemen, certain local lodges of said Brotherhoods, the Texas & Pacific Railway Company (hereinafter styled T&P), and others; for temporary restraint and ultimately a permanent injunction to prevent the placing into effect of a directive dated November 7, 1952, of the chief executives of said four named Brotherhoods; the directive stating in part that T&P train and engine employees will be permitted to maintain at least one passenger crew on Katy trains operating between Whitesboro and Fort Worth, Texas. The four Brotherhoods above named are the duly constituted bargaining representatives of appellees (plaintiffs below) and are fraternal benefit societies as well as railway labor unions.

On November 30, 1954, the trial court granted a temporary restraining order relative to the above directive, and on hearing for temporary injunction (January 24, 1955) such interlocutory relief was granted, "to preserve and maintain the status quo" pending final determination of this cause; which ruling becomes the basis of this appeal.

We glean from the record, aided by briefs of the parties, that material facts antecedent to the instant controversy are these: The Katy corporations (two in number) operate a line of railroad from St. Louis and Kansas City via Denison, Fort Worth and Waco (also Dallas and Waco) to Houston, San Antonio and Galveston. Trains of the Katy operating between Denison and Waco via Fort Worth use 71 miles of track between Whitesboro and Forth Worth that belong to the T&P Railway, which use is under and by virtue of contracts between predecessor companies of these lines of railroads, dated April 1881 and July 1920. The contracts extend to the Katy the right to both man and operate its trains over said track—an interpretation concurred in by both Katy and T&P management; and since 1881 Katy train and service employees have operated all Katy trains running over the Whitesboro-Fort Worth track with the following exception: In 1920 during Government control of railroads a consolidated train made up of both T&P and Katy equipment and under joint control, was operated by T&P personnel over the tracks between

Whitesboro and Fort Worth, continuing for a short period of time; otherwise the record discloses no T&P operation of an exclusively Katy train, either passenger or freight, over this track. And while Katy employees presently manning Katy trains— Fort Worth to Whitesboro—are under joint supervision of both Roads, the Katy men are subject to discipline only from their own Company employer.

In July 1950, the T&P sought and obtained from the Railroad Commission of Texas authority to discontinue its passenger trains No. 31 and 32, running from Fort Worth to Texarkana via Whitesboro, such change being accomplished without notice to the Katy or its participation in the Commission hearing; the latter Company at the time manning and operating three passenger trains daily over said 71 miles of track—Whitesboro to Fort Worth. Following the mentioned discontinuance of passenger service by T&P, a Committee of its transportation employees (union) made request of T&P management to man one Katy passenger train between Whitesboro and Fort Worth in lieu of their own train which had been discontinued, which request was denied; said T&P Committee then requesting that a Grand Lodge officer be assigned to make investigation and report to the national president of the particular Brotherhood. The result was a ruling by that chief official, concurred in by Chief Executives of the other Brotherhoods, in favor of such request, i. e., that T&P employees were entitled to man one Katy passenger train between these points. This ruling was appealed by Denison Lodge No. 15 (Brakemen and Conductors) to the General Board of Appeals, that Body sustaining the position of its Brotherhood president.

This order, if and when applied, would take Katy men off their own passenger trains and substitute to that extent T&P operatives; and obviously result in loss of employment and interference with seniority rights of the former (appellees). And they allege that such would be the result, they having exhausted their remedy within the respective Brotherhoods. In this connection, to complete a summary of defensive pleading, appellant Brotherhoods answered, along with other defendants; filing motions to dismiss, or in the alternative to abate the suit on grounds that Federal proceedings were and are presently pending before the National Mediation Board at Dallas, pursuant to Title 45, U.S. Code Annotated, § 151 et seq.; that the subject matter of suit involves an interpretation of working agreements, seniority, rates of pay, rules and working conditions, of which exclusive jurisdiction is vested under the National Railway Labor Act, Title 45, U.S.C.A., in the National Railway Adjustment Board; alternatively, that the suit has been prematurely brought, plaintiffs-appellees having an adequate remedy at law; that plaintiffs are bound by Union laws not to sue their Brotherhoods; that complainants, charging "arbitrary, capricious and unjust actions" by superior officers of their Brotherhoods, cannot thus sue their Brotherhoods, who are co-principals, for wrongful acts of a joint agent, because they are thereby in effect suing themselves; and bound, on the other hand, by the decisions of their Brotherhoods. Lastly, that plaintiffs are not true representatives of a class, hence not entitled to bring the action in question, for the reason that seniority rights of the class are not joint, common, or secondary, with no common question of law affecting the several rights; the seniority rights and grievances, if any, of each employee being wholly different. The T&P filed a general denial and cross-action against the Katy, all plaintiffs and defendants, inclusive of appellant Brotherhoods and some of its own employees; the content of said cross-plaintiff's affirmative pleading being enlarged upon in the concurring opinion by Chief Justice Dixon.

The Federal Mediation proceeding above mentioned, now in recess, appears to have been invoked at instance of the Chief Executives of the four Brotherhoods.

There are four classes or crafts of employees here involved. Each of the four defendant Brotherhoods is certified through its General Grievance Committee and Gen-

eral Chairman of the Katy to act as the bargaining representative of its particular class. Likewise each is, by separate and distinct action, so certified on the T&P. The Brotherhoods thereby are authorized to bargain with the Katy concerning only those persons in the craft or class that they are certified to represent, who have an employee status with the Katy. Similarly, they are authorized to bargain with the T&P only concerning the members of such craft or class having an employee status with the T&P; and as we interpret both the Railway Labor Act and Constitutions of each organization in evidence, these separate employer-employee groups are not to be commingled in a joint bargaining effort; see Report of the National Railroad Adjustment Board, 1935, at page 22; and Stephenson v. New Orleans & N.E.R. Co., 180 Miss. 147, 177 So. 509, at page 517 (unless, of course, by consent of all concerned). In the same connection there is testimony that to effectuate the directive of November 7, 1952 would require necessary alteration of passenger crew terminals; several of the Brotherhood Constitutions providing for such a change only on approval of the employees to be affected thereby; or at least, by consent of the General Grievance Committee, no approval or consent having been so obtained.

Turning to particular record evidence, the following parties-defendant, all General Chairmen, Grievance Committee, of their respective Unions, Katy Railroad, were called by plaintiffs to testify: Carl L. Flanery, Sr., Brotherhood of Railroad Trainmen, T. E. Penn, Brotherhood of Locomotive Firemen and Enginemen, Walter Johnson, Order of Railway Conductors and Brakemen, and L. A. Dye, Brotherhood of Locomotive Engineers. That these Officials and the Katy Lodges represented by them were not at all in accord with this 1952 Order requiring T&P train and engine employees to man a Katy passenger train, is certain. However, under veiled threats of disciplinary measures, they were required to sign a letter prepared by Chief Executives of the Orders, directed to both Railroad managements, requesting that said ruling be put into effect. Each witness testified that their respective duties embraced the making of bargaining contracts between Union and the Railroad, inclusive of the handling of grievances; that no labor dispute existed within their jurisdictions, the Order in question having the effect of changing or amending present contracts of collective bargaining; witness Johnson pointing out that the existing contract was inclusive of seniority rights (working conditions); all asserting that such Order was arbitrary and discriminatory to Katy men. On the other hand, from standpoint of Brotherhood Chief Executives, the 1952 Order simply restored to T&P train and engine crews the jobs taken from them by the 1950 discontinuance of passenger trains by T&P management. In the situation thus presented, appellees (Katy employees) assert a case of unjust discrimination by their own Brotherhood Chiefs, in that they alone are penalized in consequence of action (discontinuance of trains) lawfully taken by the management of another and different Railroad Company.

■ The Railway Labor Act, Title 45 U.S.C.A. § 151 et seq., creating two separate Boards (National Railroad Adjustment and National Mediation) to hear disputes with which it has power to deal, contemplates jurisdiction only of employee-employer problems; specifically stated in sec. 153(i) of the Act as "The disputes between an employee or group of employees and a carrier or carriers growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions, * * * "; and the issue here does not involve *interpretation* of the December 1952 Order, but is rather an outright attack upon its validity; the attempted amendment of their existing contract of collective bargaining, in violation of Union Constitution; and constituting arbitrary, capricious and unjustly discriminatory action by defendant Brotherhoods.

■ In our opinion, appellees have made just such a case, cognizable in a court of equity. Statutory power of the

Brotherhoods and Grand Lodge officers in their representation of all for whom they act, is not absolute; Ford Motor Co. v. Huffman, 345 U.S. 330, 73 S.Ct. 681, 97 L.Ed. 1048, and may be challenged judicially by members of the Brotherhood for actions found discriminatory, arbitrary, or capricious.

Controlling here is Hargrove v. Brotherhood of Locomotive Engineers, D.C., 116 F.Supp. 3, 7, in applicable principles and conclusions reached. There a contract was involved, similar in effect to the 'Order in question here, the Federal Court assuming jurisdiction to declare it invalid with respect to aggrieved Union members. In the Hargrove appeal, plaintiffs and those similarly situated were members of defendant Brotherhoods in good standing. Under a 1946 contract between Brotherhoods and Railway Company, plaintiffs had acquired seniority rights upon trackage within the Oak Ridge (Tenn.) Reservation Project, which tracks were operated by the Railway Company. On August 26, 1949 the Brotherhoods proposed a new contract which would fill the jobs on the Reservation with men from the Knoxville and Atlanta Division of the Railroad; which contract, being executed by the Brotherhoods and Railroad Company, served to remove plaintiffs and those similarly situated from service and to replace them with men from the Knoxville-Atlanta Division. Following are excerpts from the Court's conclusions in taking jurisdiction of the cause as against the contention that the remedy of plaintiffs was through Administrative Boards set up by the Railway Labor Act: "* * * the charge is that defendants have sacrificed their interests and rights, not on the basis of differences relevant to authorized and reasonable purposes of collective bargaining, but solely for the benefit of another group of employees represented by them, thereby violating the duties and obligations imposed upon the Brotherhoods by the Railway Labor Act. * * * I am therefore of the opinion that the complaint states a case in which the court is not lacking in jurisdiction over the subject matter, and furthermore, under the authority of Steele

v. Louisville & Nashville R. Co., supra [323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173], the complaint states a claim upon which relief can be granted. Indeed, it might be difficult to find a constitutional basis for relegating this controversy to the Railway Adjustment Board as contended by defendants, and such procedure appears particularly abhorrent when it is considered that *the defendants named herein participate in making the selections of membership on the Board,* who would pass upon the validity of their acts charged to be in disregard of the trust imposed upon them." (Emphasis ours.) See also Brotherhood of R. R. Trainmen v. Howard, 343 U.S. 768, 72 S.Ct. 1022, 96 L.Ed. 1283; 142 A.L.R., Annotations, pp. 1067–1068. Appellants seek to distinguish Steele v. Louisville & N. R. Co., 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173, and Brotherhood of R. R. Trainmen v. Howard, supra, because the issue there raised was exceptional (racial discrimination). But even in the dissenting opinion in Brotherhood of R. R. Trainmen v. Howard [343 U.S. 768, 72 S.Ct. 1026], the right of aggrieved members of a Labor Union to carry disputes with their bargaining representatives to the Courts, claiming unjust discrimination, is recognized, viz.: "* * * It would have been the same if the Brotherhood had discriminated against him on some other ground, unrelated to race. It was the Brotherhood's duty 'to act on behalf of all the employees which, by virtue of the statute, it undertakes to represent.' Steele, supra, 323 U.S. at page 199, 65 S.Ct. at page 230, 89 L.Ed. 173." And though the Hargrove case is not an Appellate Decision, it has been cited with approval by the Circuit Court of Appeals in Switchmen's Union of North America v. Ogden Union Ry., etc. Co., 10 Cir., 209 F.2d 419, certiorari denied 347 U.S. 989, 74 S.Ct. 852, 98 L.Ed. 1123.

The foregoing view of this controversy sufficiently demonstrates, in our opinion, that it is not one exclusively within the jurisdiction of the Railway Labor Act; but that to the contrary, the claims asserted by appellees are proper matters for adjudication in a court of equity. Concerning

further points presented, the following will suffice by way of disposition: (1) Manifestly this is not a jurisdictional dispute; (2) it is undisputed that appellees have exhausted all remedies within their respective unions; and under the precedents already cited, they are not precluded from suing their Brotherhoods, Chief Executives and Grand Lodge Officers—the ground of action being arbitrary, discriminatory or capricious conduct; or that such was beyond the powers or authority granted in their respective Constitutions and Union laws. See also Tunstall v. Brotherhood of Locomotive Firemen and Enginemen, 323 U.S. 210, 65 S.Ct. 235, 89 L.Ed. 187; Graham v. Brotherhood of Locomotive Firemen and Enginemen, 338 U.S. 232, 70 S.Ct. 14, 94 L.Ed. 22; Virginian R. Co. v. System Federation, 300 U.S. 515, 57 S.Ct. 592, 81 L.Ed. 789; Williams v. Central of Georgia Ry. Co., D.C., 124 F.Supp. 164; Stephenson v. New Orleans & N. E. R. Co., 180 Miss. 147, 177 So. 509. (3) The evidence supports the trial court's finding that this is a class action under Rule 42, Texas Rules of Civil Procedure, the purpose thereof being fully explained in McDonald, Texas Civil Practice, Vol. 1, sec. 234, at page 269. The Texas procedure is in language of Federal Rule 23(a, c), 28 U.S.C.A., which has been given a like judicial construction. Parker v. Lester, D.C., 112 F.Supp. 433; System Federation No. 91, etc. v. Reed, 6 Cir., 180 F.2d 991.

All points advanced are accordingly overruled and judgment of the trial court affirmed.

DIXON, Chief Justice.

I concur in the views expressed by Judge YOUNG.

This is neither a dispute between employees and their carrier employer, nor a jurisdictional dispute between two rival labor organizations. It is a dispute between some of the train and engine service employees of the Missouri-Kansas-Texas Railroad Company of Texas on the one hand and their respective labor organizations on the other hand. Plaintiffs in effect complain that their designated bargaining authorities, the Railroad Brotherhoods, have acted capriciously, arbitrarily and in abuse of their representative authority in ordering that Texas and Pacific Railroad train and engine employees be permitted to maintain at least one passenger crew operating a Missouri-Kansas-Texas engine and train between Whitesboro, Texas and Fort Worth, Texas.

The Texas and Pacific Railway Company is made a party defendant, but plaintiffs in their petition do not charge the Railway Company with initiating, promulgating, sponsoring, or even favoring the order. Apparently the only purpose in making the Railway Company a party defendant was to enjoin it from complying with the Brotherhoods' order.

The Railway Company's pleadings consist of a general denial, followed by a cross-action in which several third party defendants are joined, including the Missouri-Kansas-Texas Railroad Company of Texas. The cross-action seeks only a declaratory judgment informing the parties whether they must comply with the order of the Brotherhoods. The attitude of the Texas and Pacific Railway Company is that of a disinterested spectator who does not care particularly which of the disputants prevails, but for its own protection, needs to be told what to do. This attitude is reflected throughout its pleadings, and as an example I quote this excerpt: "Pacific Company represents to the Court that if its employees have a right to employment in operating a Missouri Company passenger train between Whitesboro and Fort Worth, Texas, the Court should adjudicate and declare such right in conjunction with the Court's adjudication and declaration of the Defendant Missouri Company's duty and obligation to afford such employment to Pacific Company's employees; and if Defendant Missouri Company has no duty or obligation to afford such employment to Pacific Company's employees, then this Court should adjudicate and declare that Pacific Company's employees have no right of employment in so operating any of said Missouri Company's passenger trains."

Since this is a dispute between the Brotherhoods and some of their own members, I do not think the Railway Mediation Board or the Railway Adjustment Board has jurisdiction.

The Constitutions of the Brotherhoods provide that members of a Brotherhood may not sue their own organization, but are bound by the decisions of their properly chosen officers and committees. But there are occasions when such provisions are not applicable. Hàving exhausted all recourse within their organization, members may resort to the courts in those instances when the officers of their Brotherhood have acted capriciously, arbitrarily, and unjustly, thereby depriving the members of valuable property rights. Steele v. Louisville & N. R. Co., 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173. The pleadings in the instant case present that very issue. And the evidence adduced at the hearing in my opinion was sufficient to warrant the granting of a temporary injunction.

## On Rehearing

DIXON, Chief Justice.

In their motion for rehearing appellants allege in points Nos. 1 and 2 that we erred in affirming a temporary injunction (1) "which enjoins a strike called in a railway labor controversy and the holding thus abridges the freedom of the employees to cease work, imposes a condition of involuntary servitude upon the employees, and deprives the employees of their liberty, privileges or immunities without due process in violation of Amendments 5, 13, and 14 of the U. S. Constitution and Article I, sec. 19, Bill of Rights, Texas Constitution [Vernon's Ann.St.Const.]"; and (2) "which enjoins a strike called in a railway labor controversy, such temporary injunction violating Federal and State constitutional guaranties of freedom of speech."

▮ Appellees have filed motion to strike the above allegations from appellants' motion for rehearing for the reason that they present contentions outside the record and represent an attempt to raise for the first time on rehearing points not raised by appellants in their pleadings in the trial court or by their briefs in this Court. In support of their motion to strike appellees cite Aycock v. Travis County, Tex.Civ.App., 255 S.W.2d 910, at page 914; City of Fort Worth v. Burnett, Tex.Civ.App., 115 S.W. 2d 436, at page 442; 3-B Tex.Jur. 259.

We overrule said points Nos. 1 and 2 of appellants' motion for the reasons urged by appellees in their motion to strike, and for the further reason that in light of the record before us we are of the opinion that said points are without merit. Other points presented in the motion for rehearing are overruled for reasons set out in original and concurring opinions.

Appellants' motion for rehearing is overruled; and consistent with our consideration in full of appellants' said motion, appellees' motion to strike is also overruled.

CRAMER, J., dissents.

CRAMER, Justice (dissenting on rehearing).

I find myself unable to agree with the majority in their disposition of this cause. The record here shows this to be a class suit, filed by F. L. Luckie and twelve others against the Brotherhood of Railroad Trainmen, three other railroad brotherhoods or unions, various subordinate lodges or unions, numerous union officials, the Texas & Pacific Railway Company, and others for the purpose of establishing seniority rights asserted by them under the collective bargaining agreement between the unions and the representatives of the Railroads. In my opinion it involved all matters which had been initiated before the Railroad Adjustment Board and the National Mediation Board, and such Boards were at the time of the filing of this suit in the process of hearings; such Boards, in my opinion, having acquired prior jurisdiction over the matters, the court should not have interfered with their orderly proceedings, unless such Boards should act arbitrarily in the expeditious disposition of the matters before

them. The record here shows the Boards were proceeding expeditiously and in due order at the time the suit was filed. Under such record, the granting of the injunction was not justified. Colbert v. Brotherhood of Railroad Trainmen, 9 Cir., 206 F.2d 9; Wilburn v. Missouri-Kansas-Texas R. Co. of Texas, Tex.Civ.App., 268 S.W.2d 726. See also International Ass'n of Machinists v. Sandsberry, Tex.Civ.App., 277 S.W.2d 776. A writ of error, however, has been granted in the Sandsberry case.

The present case is not one involving solely and individually a contract of employment by the separate members of the crew, but is based on the employment of a group under a collective bargaining agreement. Under such circumstances the bargaining agreement, as to seniority rights of the members of the crews, controls, and the Mediation Board's functions having been invoked, such Board was in process of a hearing at the time this suit was filed and the injunction here appealed from granted; and a strike was about to be called. All this brought about the controversy here, which is clearly within the jurisdiction of the Boards.

The Federal Constitution grants exclusive power over interstate commerce to Congress. Congress, in the Railway Labor Act, Title 45, ch. 8, § 151a, U.S.C.A., states its purpose as follows: " * * * (1) To avoid any interruption to commerce or to the operation of any carrier engaged therein; * * * (3) to provide for the complete independence of carriers and of employees in the matter of self-organization to carry out the purposes of this chapter; (4) to provide for the prompt and orderly settlement of all disputes concerning rates of pay, rules, or working conditions; (5) to provide for the prompt and orderly settlement of all disputes growing out of grievances or out of the interpretation or application of agreements covering rates of pay, rules, or working conditions."

The functions of the National Mediation Board invoked by the T&P Railway Company are as follows: "First. The parties, or either party, to a dispute between an employee or group of employees and a carrier may invoke the services of the Mediation Board in any of the following cases: (a) A dispute concerning changes in rates of pay, rules, or working conditions not adjusted by the parties in conference. (b) Any other dispute not referable to the National Railroad Adjustment Board and not adjusted in conference between the parties or where conferences are refused." Title 45, § 155, U.S.C.A.

The issues in this case being properly before, and being then heard by, the Mediation Board prior to, and at the time of, the filing of this suit, this Court should not have proceeded further than to sustain the plea in abatement of the T&P Railway Company. In American Air Export & Import Co. v. O'Neill, 95 U.S.App.D.C. 274, 221 F.2d 829, syl. 1, the District of Columbia Circuit Court of Appeals held: "Where National Mediation Board advised employer that, under Railway Labor Act, it had assumed jurisdiction of dispute between employer and union and that a mediator would be assigned to investigate the dispute, but no further action had been taken, action by employer to enjoin further Board action on ground that employer was not subject to jurisdiction of Board under provisions of Railway Labor Act would be dismissed since administrative process had only begun and controversy was not ripe for judicial review."

The trial court here in its findings of fact, among other things, found as follows: "And it further appearing to the court that said ruling of the chief executives of said Brotherhoods, if put into effect, would take passenger train work away from two train and engine service crews of Missouri-Kansas-Texas Railroad Company of Texas, who have the right to perform such work, and give said passenger train work to one train and engine service crew of The Texas and Pacific Railway Company, who have no right to perform such work; that said transfer of said work would cause the demotion from the position of engineer to the position of fireman of two engineers of Missouri-Kansas-Texas Railroad Company

of Texas with resulting loss in wages to said engineers; that said transfer of said work would cause the demotion from the position of conductor to the position of brakeman of two conductors of Missouri-Kansas-Texas Railroad Company of Texas with resulting loss in wages to said conductors; and that said transfer of work would cause four firemen of Missouri-Kansas-Texas Railroad Company of Texas and four brakemen of said railroad Company to lose their jobs with resulting loss of all earnings; And it further appearing to the court that said transfer of passenger train work from train and engine service employees of Missouri-Kansas-Texas Railroad Company of Texas to train and engine service employees of The Texas and Pacific Railway Company of Texas would prevent train and engine service employees of Missouri-Kansas-Texas Railroad Company of Texas from exercising their seniority rights; that said transfer of work would disrupt crew assignments of Missouri-Kansas-Texas Railroad Company of Texas on its North Texas District, including said joint track, and particularly such crew assignments between Denison, Texas, and Waco, Texas, via Fort Worth; and that said transfer of work would require the establishment of passenger crew terminals at Whitesboro and Fort Worth where none now exist; * * * And it further appearing to the court that placing a Texas and Pacific train and engine crew on one Missouri-Kansas-Texas passenger train operating between Whitesboro and Fort Worth would effect a change, modification, amendment or abrogation of the terms and provisions of said existing written contracts executed by Missouri-Kansas-Texas Railroad Company and Missouri-Kansas-Texas Railroad Company of Texas and the General Chairmen of said Brotherhoods on the lines of railroad operated by said railroad companies; * * * And it further appearing to the court that the right of said Brotherhoods to act as bargaining agents for the respective train and engine service employees of the Texas and Pacific Railway Company and the right of the chief executives and other Grand Lodge officers of said Brotherhoods to represent said train and engine service employees of The Texas and Pacific Railway Company does not authorize or empower said Brotherhoods or said chief executives or said Grand Lodge officers to take work and jobs away from train and engine service employees of Missouri-Kansas-Texas Railroad Company of Texas, for whom they also bargain and whom they also represent, and to give said work and jobs to the train and engine service employees of The Texas and Pacific Railway Company."

Believing that the Federal Boards should have been accorded the exclusive right to hear and dispose of the matters involved at the time the present suit was filed in the District Court, the District Court should not have taken jurisdiction. Or, when its jurisdiction was invoked, it should have awaited the time when the administrative process had been concluded, before proceeding with this case.

I therefore respectfully dissent.